UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DOUG KISAKA,

            Plaintiff

     v.

UNIVERSITY OF SOUTHERN CALIFORNIA,

            Defendant.

Case No. 2:21-cv-04757-CJC (GJS)

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

      This Report and Recommendation is submitted to United States District Judge Cormac J. Carney, pursuant to 28 U.S.C. § 636 and General Order No. 05-07 of the United States District Court for the Central District of California.

## BACKGROUND

      On June 9, 2021 Plaintiff filed a civil complaint [Dkt. 1, "Complaint"].  The sole Defendant is the University of Southern California ("USC").  On August 30, 3021, USC filed a motion to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [Dkt. 10, "Motion"].  In the Motion, USC argues that the Complaint is untimely, is barred by the res judicata doctrine, and some of the claims pleaded fail to set forth adequate allegations to state a claim upon which relief can be granted.

On August 31, 2021, the Court issued an Order directing briefing on the Motion [Dkt. 11, August 31 Order"]. The August 31 Order directed Plaintiff to file his Opposition to the Motion by no later than September 24, 2021. The Order also cautioned Plaintiff that a failure to respond to the Motion could be deemed to constitute consent to a grant of the Motion pursuant to Local Civil Rule 7-12.

The deadline for Plaintiff to oppose the Motion passed and Plaintiff neither filed his Opposition nor requested an extension of time to do so, notwithstanding that he had filed other motions and requests in this case during the relevant period [*see* Dkts. 12, 14]. On October 8, 2021, however, Plaintiff filed an untimely request for an extension of time [Dkt. 20], which the Court granted [Dkt. 22]. On October 22, 2021, Plaintiff filed his Opposition to the Motion [Dkt. 23], and on November 1, 2021, Defendant filed its Reply [Dkt. 24].

The Motion, thus, is under submission. Having reviewed the filings in this case and the record, the Court concludes that the Motion should be granted, because it is obvious that this action is barred by the doctrine of res judicata.[1]

## BACKGROUND

As explained below, this action is Plaintiff's fifth federal lawsuit stemming from a stayaway order that USC issued against him in 2010, and its assertedly harmful effects, and other allegedly wrongful actions taken by USC and its officers and employees. The Complaint's allegations must be considered in the light of Petitioner's prior similar and/or identical actions.

In March 2011, Plaintiff filed a complaint in this District in Case No. 2:11-cv-01942-BRO (MANx) (the "First Action").[2] The First Action complaint [Dkt. 3]

---

[1]    In light of the Court's finding that res judicata bars this case in full, the Court need not, and does not, address the alternative arguments for dismissal set forth in the Motion.

[2]    Pursuant to Rule 201 of the Federal Rules of Evidence, the Court takes judicial notice of its own dockets, records, and files in connection with Plaintiff's earlier actions filed in this District,

named USC and five identified individuals as Defendants, included Doe defendants, and pleaded 14 federal and state law claims.  Plaintiff's claims stemmed from alleged harassment and other wrongful conduct by USC officers and employees based on his race, which included the early 2010 issuance of a stayaway order, a trespassing arrest, interference with his financial aid, and the termination of his graduate studies.  On December 20, 2012, May 2, 2013, and October 11, 2013, Plaintiff filed essentially the same motion seeking leave to amend the First Action complaint to name four additional Defendants in place of the Doe defendants and to add an additional claim.  All three motions were denied (for procedural and other reasons), and trial was set for June 10, 2014.  [Dkts. 54, 71, 88, 112, 124].  In the meantime, various other motions were filed in the First Action, including many related to Plaintiff's failure to comply with discovery and court orders.  On April 14, 2014, former United States District Judge Beverly O'Connell dismissed the First Action, pursuant to Rules 37(b) and 41(b) of the Federal Rules of Civil Procedure, due to Plaintiff's ongoing and repeated failure to comply with court orders and discovery.  [Dkt. 159, the "First Action Dismissal Order."[3]]  Plaintiff appealed the dismissal of the First Action (No. 14-55649), and on August 26, 2016, the United States Court of Appeals for the Ninth Circuit affirmed the judgment.  [Dkts. 174-175.]

In February 2017, Plaintiff filed a lawsuit in the Los Angeles Superior Court (Case No. BC650048) (the "Second Action").  On March 3, 2017, the defendants removed the Second Action to this District, and it was assigned Case No. 2:17-cv-

---

as well as those of the United States Court of Appeals for the Ninth Circuit available through the PACER system and of the California state courts available through their electronic docketing systems.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (a court is allowed to consider extrinsic evidence without converting a motion to dismiss to a motion for summary judgment when the evidence is judicially noticeable as a matter of public record).

[3]    Docket No. 159 is the redacted version of the First Action Dismissal Order.  Docket 160 contains the unredacted version of that Order, which has been filed under seal.

01746-BRO (MRWx).  The Second Action complaint again sued USC and various of its officers and employees, again raised various federal and state law claims, and again stemmed from the same 2010 stayaway order issued by USC and the same other assertedly wrongful conduct by USC officers and employees that had been alleged in the First Action complaint.  [*See* Dkt. 1.]  Defendants moved to dismiss the Second Action complaint on the grounds that it was untimely, barred by res judicata, and failed to state a claim upon which relief could be granted.  [Dkt. 12.]  In response, Plaintiff amended the Second Action complaint to remove his federal claims and moved to remand the case.  [Dkts. 13-14.]  District Judge O'Connell then denied the motion to dismiss as moot given the filing of the amended complaint.  [Dkt. 15.]  Defendants filed a motion to dismiss the amended complaint, again raising the same three grounds as before.  [Dkt. 17.]  On May 11, 2017, District Judge O'Connell remanded the Second Action to state court.  [Dkt. 18.]  In her May 11, 2017 Order, she declined to exercise supplemental jurisdiction over the case, which by then consisted solely of state law claims, and she did not consider any of the arguments raised in the second motion to dismiss or in Plaintiff's opposition thereto, including whether the Second Action was barred by res judicata.  [*Id.*]

Once the Second Action was back in the Los Angeles Superior Court, the defendants filed a demurrer based on res judicata and statute of limitations grounds. The demurrer was sustained on August 9, 2017, and judgment entered in the Second Action on August 24, 2017, dismissing the Second Action with prejudice.  In particular, the Los Angeles County Superior Court concluded that the First Action Dismissal Order was a judgment on the merits under California law and, thus, had a res judicata effect.  Plaintiff appealed (No. B284559), and on December 21, 2018, the California Court of Appeal affirmed, finding that the Second Action was barred in full by res judicata due to the First Action Dismissal Order.

On April 22, 2020, Plaintiff filed his third lawsuit based on the events alleged in the First and Second Actions, in Case No. 2:20-cv-03680-CJC (GJSx) (the "Third

Action").  The Third Action complaint was the same pleading as the original Second Action complaint in all salient respects, albeit with the addition of a few extra claims based on the same subject-matter at issue in the First and Second Actions.

On April 29, 2020, District Judge Carney denied Plaintiff's application for leave to proceed in forma pauperis and dismissed the Third Action [Dkt. 6, the "April 29 Order"].  The April 29 Order found that the Third Action complaint was: substantially similar to the complaint filed in the First Action; and essentially identical to the original Second Action complaint, with the exception of a few added claims based on the same facts as before as well as new barebones and conclusory allegations of "continuing violation" and "current, permanent violations."  As to the latter, the April 29 Order concluded that Plaintiff had added these allegations in an obvious (and unsuccessful) attempt to overcome the claim preclusion and statute of limitation problems he knew he faced.  As the April 29 Order noted, the last factual event alleged to have occurred was Plaintiff's stroke and accident in August 2012 – over seven and a half years before the Third Action commenced.  The April 29 Order found that the Third Action Complaint was untimely under all possibly applicable statutes of limitations and explained why, including explaining why Plaintiff's tolling allegations were ineffective.  In addition, the April 29 Order found that the Third Action was barred by res judicata, because:  it arose out of the same transactional nucleus of facts and involved the same parties and the same claims as had been pleaded (or could have been pleaded) as in the First Action; and the First Action Dismissal Order constituted an adjudication on the merits for res judicata purposes.  Further, the April 29 Order found that a number of the claims alleged in the Third Action complaint plainly failed on their faces and no amendment could cure them and explained why.

Plaintiff did not appeal the April 29 Order.  Instead, nine days after it issued and the Third Action was dismissed, he filed his fourth action in this District stemming from the 2010 USC stayaway order and his  previously-made allegations

of wrongful conduct by USC and its officers and employees, in Case No. 2:20-cv-04178-CJC (GJSx) (the "Fourth Action").  The Fourth Action complaint dropped the numerous individuals who were defendants in the First, Second, and Third Actions and, as in this action, kept only USC as a defendant.  As with the complaints in the First, Second, and Third Actions, the Fourth Action complaint asserted federal and state claims premised on:  the same allegedly wrongful conduct of USC and its officers and employees alleged in the three prior cases; and the 2010 stayaway order and the effects it allegedly has had on Plaintiff, including the 2012 stroke mentioned in his earlier actions and a related injury he suffered days afterward.

On May 13, 2020, District Judge Carney denied Plaintiff's application for leave to proceed in forma pauperis and dismissed the Fourth Action [Dkt. 8, the "May 13 Order"].  The May 13 Order concluded that the Fourth Action complaint was an unsuccessful attempt to plead around the earlier-identified fundamental defects and bars to Plaintiff's repeated efforts to litigate the validity of the 2010 stay away order and the events he alleged had preceded and succeeded it.  The May 13 Order also concluded that Plaintiff's attempts to plead around the statute of limitations bar – by dropping allegations related to events that preceded March 26, 2010, and by alleging that he continues to suffer consequences as a result of the 2010 stay away order and the events related to it – did not override the res judicata and untimeliness bars to his Fourth Action.

Plaintiff appealed the May 13 Order (No. 20-55559).  On February 23, 2021, the Ninth Circuit dismissed the appeal based on its finding that the "appeal is frivolous."  On May 26, 2021, the Ninth Circuit denied Plaintiff's motion for reconsideration, and the mandate issued on June 3, 2021.

Six days later, Plaintiff commenced this action – his fifth – resting on the same subject-matter that served as the basis for the First, Second, Third, and Fourth Actions.

6

## THE COMPLAINT ALLEGATIONS

The instant Complaint is almost identical to the Fourth Action complaint that both this Court and the Ninth Circuit have determined was barred by untimeliness and res judicata.  Pages 1-10 of both pleadings are identical.  At page 11 of the instant Complaint, Plaintiff re-orders what were the allegations of ¶¶ 33-40 of the Fourth Action complaint (now presented ¶¶ 38-46, with ¶¶ 33-37 left blank).  He then immediately sets forth at ¶¶ 47-51 of the instant Complaint the same tolling allegations made in the Fourth Action complaint (at ¶¶ 41-45).[4]  These are followed by the present Complaint's "Requisites for Relief" section and First through Sixteenth Causes of Action of the Complaint, which are identical to the same allegations and causes of action as pleaded in the Fourth Action complaint.  The prayers for relief in both the Fourth Action complaint and the instant Complaint also are identical.  Apart from the above re-ordering of allegations, the only difference between the Fourth Action complaint and the instant Complaint is that the latter alleges an additional claim, *i.e.*, the Seventeenth Cause of Action labeled "Conspiracy," with consists of a single conclusory statement that USC conspired to harm Plaintiff.

In short, with the exception of a new one sentence "conspiracy" claim tacked on to the end of the instant Complaint, Plaintiff has instituted an action that is identical to the Fourth Action and that is functionally identical to the three actions that preceded that fourth case.  For the fifth time, Plaintiff complains about the 2010 stayaway order issued by USC and its alleged harmful consequences (including a

---

[4]    In the May 13 Order, the Court found that these tolling allegations – in which Plaintiff claimed that his limitations period was tolled because he purportedly had pursued an alternative remedy in a different forum – were specious, reasoning:  "Labelling his prior lawsuits brought in this District stemming from the stay away order and raising many of the same claims alleged once again, and his duplicative case brought in the state court that was found to be barred by res judicata, to be the pursuit of 'alternative remedies' in 'different' fora is so frivolous that it implicates Fed. R. Civ. P., 11."  Undeterred – including by the Ninth Circuit's conclusion of frivolity – Plaintiff repeats those same specious allegations in his present Complaint.

stroke he suffered in 2012, and a related injury incurred days later), as well as allegedly wrongful and racially-motivated conduct by USC and its officers and employees that took place around that same time.  Plaintiff raises here the same federal and state law claims that he has raised in the four prior iterations of this lawsuit, which include claims based on Title VI of the Civil Rights Act, 42 U.S.C. §§ 1981, 1985 and 1986, violations of the California Constitution and California statutes, and various torts.  There is **nothing** new about this case – it is the very same lawsuit Plaintiff had been pursuing since 2011, other than that the individual defendants have fallen by the wayside and Plaintiff has omitted allegations pertaining to pre-March 26, 2010 events.

## STANDARDS OF REVIEW

Defendant USC seeks dismissal of this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Review under Rule 12(b)(6) is generally limited to the contents of a complaint.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  However, courts may "consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

"[A]ffirmative defenses may not be raised by motion to dismiss" unless "the defense raises no disputed issues of fact."  *Scott v. Kuhlman*, 746 F.2d 1377, 1378 (9th Cir. 1984) (per curiam) (affirming the district court's dismissal of a complaint when "[t]he defendants raised res judicata in their motion to dismiss under Rule 12(b)(6)"); *see also Goldberg v. Cameron*, 694 Fed. App'x 564, 565-66 (9th Cir.

2017) (finding no error in the grant of defendant's Rule 12(b)(6) motion to dismiss brought on the ground of res judicata); *Bayone v. Baca*, 130 F. App'x 869, 872 (9th Cir. 2005) ("We have held that the affirmative defense of res judicata may be raised in a motion to dismiss under Rule 12(b)(6)," citing *Scott, supra*).  Thus, for example, dismissal can be ordered based on res judicata when the elements are established by the text of the complaint and judicially-noticeable facts.  *See, e.g., Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1054 (9th Cir. 2005) ("As a general matter, a court may, sua sponte, dismiss a case on preclusion grounds where the records of that court show that a previous action covering the same subject matter and parties had been dismissed.") (internal quotation marks and citation omitted); *see also Scott*, 746 F.2d at 1378 (a Rule 12(b)(6) dismissal can be granted if the court is able to discern the relevant facts by way of judicial notice of the earlier court proceeding).

If a complaint is to be dismissed, "[u]nder Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved.  Courts are not required to grant leave to amend if a complaint lacks merit entirely." *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000); *see Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" (internal citations and quotation omitted)).  Leave to amend is not appropriate, even given the liberal pleading standard for *pro se* litigants, when "the pleading 'could not possibly be cured by the allegation of other facts.'" *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (internal quotation omitted).

# DISCUSSION

As noted earlier, the Motion seeks dismissal on the ground of untimeliness, among other reasons.  The instant Complaint is simply a re-do of the earlier-filed

1  Fourth Action complaint.  This Court found that the Fourth Action complaint was
2  untimely, and the Ninth Circuit determined that Plaintiff's appeal of that issue was
3  "frivolous."  As a result, it seems obvious that this later-filed duplicative Complaint
4  is untimely as well.  The Court, however, need not assess Plaintiff's various tolling
5  allegations and timeliness arguments and actually resolve the timeliness issue,
6  because the conclusion that this repetitive case is barred by res judicata is
7  inescapable.

8      "This Court has long recognized that '[p]ublic policy dictates that there be an
9  end of litigation; that those who have contested an issue shall be bound by the result
10  of the contest, and that matters once tried shall be considered forever settled as
11  between the parties.'"  *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 401
12  (1981) (citation omitted).  The res judicata doctrine provides that a final judgment
13  on the merits bars further claims by the parties or their privies based on the same
14  cause of action.  *See, e.g., Tahoe-Sierra Pres. Council v. Tahoe Reg'l. Planning*
15  *Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003); *see also Robertson v. Isomedix, Inc.*,
16  28 F.3d 965, 969 (9th Cir. 1994) (the "doctrine of res judicata bars a party from
17  bringing a claim if a court of competent jurisdiction has rendered a final judgment
18  on the merits of the claim in a previous action involving the same parties or their
19  privies").  "Res judicata bars relitigation of all grounds of recovery that were
20  asserted, or could have been asserted, in a previous action between the parties,
21  where the previous action was resolved on the merits."  *United States ex rel. Barajas*
22  *v. Northrop Corp.*, 147 F.3d 905, 909 (9th Cir. 1998).  "It is immaterial whether the
23  claims asserted subsequent to the judgment were actually pursued in the action that
24  led to the judgment; rather, the relevant inquiry is whether they could have been
25  brought."  *Id.; see also Robertson*, 28 F.3d at 969 ("[r]es judicata bars all grounds
26  for recovery that *could have been asserted,* whether they were or not, in a prior suit
27  between the same parties on the same cause of action").  The doctrine "is meant to
28  protect parties against being harassed by repetitive actions."  *Tahoe-Sierra Pres.*

10

*Council*, 322 F.3d at 1077 (internal quotation marks omitted).  The doctrine applies even if the prior judgment assertedly "may have been wrong or rested on a legal principle subsequently overruled in another case." *Federated Dept. Store*, 452 U.S. at 398.

For res judicata to apply, there must be "1) an identity of claims, 2) a final judgment on the merits, and 3) privity between parties." *Headwaters, Inc*, 399 F.3d at 1052.  With respect to ***the privity of parties requirement***, USC was named as a defendant in the First, Second, Third, and Fourth Actions, as well as in this case, and Plaintiff has been the sole plaintiff in all five cases.  The privity requirement, therefore, is met easily.

With respect to ***the identity of claims requirement***, all five cases revolve around the same transactional nucleus of alleged facts, namely, that USC's officers and employees engaged in a variety of wrongful actions and behaviors for racial reasons, that USC relatedly issued a stayaway order against Plaintiff in 2010, and this order has caused him harm since its issuance.  Indeed, each of Plaintiff's five actions have rested on essentially identical complaints and allegations, with only nominal differences.  Any claims added to succeeding lawsuits plainly are claims that "could have been" asserted in the original First Action, such as Plaintiff's one-sentence "conspiracy" claim added in this case.  Plaintiff has filed the *same* lawsuit five times now and it already has been found to be barred by res judicata on three prior occasions.  This time is no different.  The identity of claims requirements is readily satisfied.

With respect to ***the final judgment on the merits requirement***, the First Action was dismissed pursuant to Rule 37(b) and Rule 41(b).  Rule 37 provides that dismissal may be ordered as a sanction for failure to comply with discovery obligations and related court orders.  Rule 41(b) provides that a case may be involuntarily dismissed if a plaintiff fails to prosecute, to comply with the Federal Rules of Civil Procedure, or to comply with a court order.  There is no question that

11

the First Action Dismissal Order is a final judgment, as it was never appealed.

For purposes of the res judicata final judgment on the merits requirement, "[t]he phrase 'final judgment on the merits' is often used interchangeably with 'dismissal with prejudice.'" *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002); *see also In re Marino*, 181 F.3d 1142, 1144 (9th Cir. 1999) (a dismissal with prejudice, whatever its basis, is "on the merits" and has res judicata effect).  The First Action Dismissal Order did not specifically state that the dismissal of the case under Rules 37(d) and 41(b) was "with" prejudice or "without" prejudice.  The failure to so specify, however, does not mean that the dismissal was not a final judgment on the merits for res judicata purposes.  *Stewart*, 297 F.3d at 956.  As the Ninth Circuit has explained, Rule 41(b) explicitly provides that "[u]nless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule – except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 – operates as an adjudication on the merits."  If none of those three exceptions are the basis for dismissal, then the order dismissing the action constitutes an adjudication on the merits regardless of the failure to specify whether it was with or without prejudice.  *Id.; see also Koshak v. County of Orange*, 637 Fed. App'x 323, 324 (9th Cir. 2016) ("The failure to state whether the dismissal was with prejudice or not is immaterial where the terms 'adjudication on the merits' and 'with prejudice' are interchangeable.") (citing *Stewart*).

An involuntary dismissal under Rule 41(b) for the reasons noted in the Rule (failure to prosecutor or to comply with a court order or rule) or under Rule 37(d) has a res judicata effect.  *See Costello v. United States*, 365 U.S. 265, 286 (1961) (under the above language of Rule 41(b), "it is therefore logical that a dismissal on one of these grounds should, unless the Court specified otherwise, bar a subsequent action"); *United States v. $149,345 U.S. Currency*, 747 F.2d 1278, 1280 (9th Cir. 1984) (dismissal of a first action as a discovery sanction constituted a judgment on the merits under Rule 41(b) and had a res judicata effect as to a second action).  It is

1  well-established in the Ninth Circuit that an involuntary dismissal under Rule 41(b)

2  and/or Rule 37 operates as an adjudication on the merits for purposes of the res

3  judicata doctrine.  *Owens v. Kaiser Foundation Health Plan*, Inc., 244 F.3d 708, 714

4  (9th Cir. 2001); *see also United States v. Schimmels (In re Schimmels*), 127 F.3d

5  875, 884 (9th Cir. 1997) ("An involuntary dismissal generally acts as a judgment on

6  the merits for the purposes of *res judicata*, regardless of whether the dismissal

7  results from procedural error or from the court's considered examination of the

8  plaintiff's substantive claims."); *Wyle v. R.J. Reynolds Industries, Inc.*, 709 F.2d

9  585, 592 (9th Cir. 1983) ("By its terms, Rule 37 authorizes the sanction of dismissal,

10  and a punitive dismissal is equivalent to an adjudication on the merits."); *P.Y.M.T. v.*

11  *City of Fresno*, No. 1:16-cv-0817-AWI, 2017 WL 2868443, *3 (E.D. Cal. July 5,

12  2017) (involuntary dismissals, including under Rules 37 and 41(b), are adjudications

13  on the merits for res judicata purposes); *Syufy Enterprises v. American Multicinema,*

14  *Inc.*, 575 F. Supp. 431, 435 (N.D. Cal. 1983) ("a dismissal under Rule 37 operates as

15  an adjudication on the merits").

16       Because District Judge O'Connell's First Action Dismissal Order did not "state

17  otherwise," under longstanding Ninth Circuit precedent, the First Action Dismissal

18  Order – as an involuntary dismissal – operates as an adjudication on the merits of

19  Plaintiff's claims and constitutes a dismissal of them with prejudice.  *See Stewart*,

20  297 F.3d at 956 (when the first dismissal did not state that whether it was with or

21  without prejudice, under Rule 41(b)'s language, it constituted a with prejudice

22  adjudication on the merits); *In re Jee*, 799 F.2d 532, 534 n.2 (9th Cir. 1986) (if an

23  involuntary dismissal does not specify that it is with or without prejudice, then under

24  Rule 41(b), it "is considered to be with prejudice"); *Huey v. Teledyne, Inc.*, 608 F.2d

25  1234, 1237 (9th Cir. 1979) (when a dismissal for lack of prosecution is made

26  without any qualifying language, "Rule 41(b) specifies that such a dismissal, unless

27  otherwise specified, operates as an adjudication on the merits, and thus is one with

28  prejudice"); *Moon v. Dulles*, 237 F.2d 241, 242 (9th Cir. 1956) (when the first

dismissal order did not specify if it was with or without prejudice, under Rule 41(b), it was an adjudication on the merits and had res judicata effect); *see also Nutrition Distribution, LLC v. IronMag Labs, LLC*, 723 Fed. App'x 397, 398 (9th Cir. 2018) (although the dismissal of the prior action did not say whether it was with prejudice, under Rule 41(b), "we interpret the dismissal as an adjudication on the merits that was therefore with prejudice").[5]

Accordingly, the governing precedent makes clear that the First Action Dismissal Order was an adjudication on the merits for purposes of the res judicata doctrine.  The Court already has so determined in the April 29 Order in the Third Action and the May 13 Order in the Fourth Action, in both instances finding that the First Action Dismissal Order constitutes a res judicata bar to Plaintiff's continued efforts to raise the claims that are now asserted again through the instant Complaint. The Ninth Circuit agreed, finding Plaintiff's appeal of the May 13 Order in the Fourth Action to be "frivolous."  Thus, the final judgment on the merits requirement is met here.

In his Opposition, Plaintiff does not contend that the identity of claims and privity of parties res judicata elements are met, but he vigorously disputes that the final judgment on the merits requirement is satisfied notwithstanding the foregoing governing law and the Court's prior findings.  Plaintiff spends some time arguing that, following the remand of the Second Action, the state trial and appellate courts erred by according res judicata effect to the First Action Dismissal Order.  Whether or not the state courts erred is of no moment in this case, because the issue before

---

[5]     Under this rule, District Courts in the Ninth Circuit routinely find that involuntary dismissals for failure to prosecute and/or failure to comply with court rules and orders to have an adjudicated on the merits/res judicata effect regardless of the dismissal order's failure to specify whether the dismissal was with or without prejudice.  *See, e.g., Govindasamy v. Selvasekaran*, No. CV 17-0235-MWF (SSx), 2017 WL 8180628, *1 (C.D. Cal. July 24, 2017); *Coleman v. Bank of America Corp.*, No. CV 130-7157-MWF (MANx), 2013 WL 12115773, *2-3 (C.D. Cal. Nov. 21, 2013); *Quinto v. J.P.Morgan Chase Bank*, No. 11-cv-02920-LHK, 2011 WL 6002599, *6 (N.D. Cal. Nov. 30, 2011).

the Court is whether the First Action Dismissal Order was an adjudication on the merits for res judicata purposes in this <u>federal</u> action.  What happened in the Second Action has nothing to do with the res judicata issue that requires resolution here, and in any event, this federal court is not an appropriate forum for Plaintiff's years-after-the-fact attempt to challenge a final state court judgment.  There is no need to consider Plaintiff's arguments and assertions regarding the state courts' resolution of the Second Action any further.

Turning to Plaintiff's principal argument, Plaintiff contends that, for res judicata purposes, a dismissal for failure to prosecute is not an adjudication on the merits as a matter of law and that the First Action Dismissal Order was made on a "without prejudice" basis.  Plaintiff repeatedly accuses USC of lying and deception in arguing that the First Action Dismissal Order constitutes an adjudication on the merits, and he asserts that due to USC's "falsehood," the Motion must be denied summarily, because it purportedly rests on an "unequivocally false" premise.  [*See* Opposition at 2-4.]  Plaintiff represents affirmatively that former District Judge O'Connell did not intend for her First Action Dismissal Order to constitute a with prejudice dismissal and an adjudication on the merits for res judicata purposes, because:  (1) she stated that she would have ruled otherwise had Plaintiff provided additional medical records, but Plaintiff should be excused from his failure to do so; and (2) she denied the Defendants' motion to dismiss the Second Action and expressly stated in her ruling that she rejected the defense's res judicata argument.  [*See id.* at 3, 9, 12-13]

The first obvious problem with Plaintiff's arguments is that there is no falsehood set forth in the Motion.  The Motion essentially parrots the Court's own findings and analyses set forth in the April 29 Order and the May 13 Order.  So, Plaintiff's assertion of falsity rests on the premise that the Court's prior findings were "unequivocally false" and erroneous and, further, that the Ninth Circuit similarly erred when it dismissed Plaintiff's appeal from the May 13 Order as

1    "frivolous."  Moreover, if Plaintiff's assertion of falsity were correct, then all of the

2    Supreme Court and Ninth Circuit decisions on which the Court has relied in finding

3    the third res judicata element met necessarily were decided wrongly as well.

4    Plaintiff's untimely invitation to reconsider the Court's prior rulings is declined,

5    particularly the factually and legally meritless nature of his arguments.

6         Plaintiff's argument rests primarily on *Semtek Int'l Inc. v. Lockheed Martin*

7    *Corp.*, 531 U.S. 497 (2001), which he claims stands for the proposition that the

8    Supreme Court has held that, for res judicata purposes, a Rule 41(b) dismissal "is

9    not an adjudication on the merits, but rather, a dismissal without prejudice."

10   [Opposition at 10.]  Apart from the fact that this assertion contradicts *Costello*,

11   *supra*, Plaintiff misunderstands the *Semtek* decision, which stemmed from a

12   California federal district court's dismissal of the plaintiff's diversity jurisdiction

13   lawsuit "on the merits and with prejudice" as barred by California's two-year statute

14   of limitations.  *Id.* at 499.  The plaintiff then sued the same defendant in a new

15   action in Maryland state court, where the claims were timely under Maryland's

16   three-year statute of limitations.  *Id.* at 500. The Maryland state court found that,

17   under federal law, the dismissal of the California case had a preclusive effect for res

18   judicata purposes and dismissed the action.  *Id.*  The Supreme Court reversed and

19   remanded, holding that for purposes of the res judicata effect of a first judgment

20   stemming from a diversity case, the rules of preclusion of the state in which the

21   diversity court sits are incorporated and govern.  *Id.* at 508-09.

22        *Semtek* involved claims filed in different fora and which were dismissed in the

23   first instance pursuant to a state law untimeliness rule under an exercise of diversity

24   jurisdiction.  The Supreme Court found that, in those particular circumstances, a

25   dismissal with prejudice in the first forum may not constitute an adjudication on the

26   merits sufficient to find the claim barred by res judicata when it is re-raised in a

27   different forum, where it otherwise would not be time-barred.  As the Ninth Circuit

28   has recognized, however, *Semtek* only applies when there is a dismissal in one court

and the claim is re-raised in a different court; it is inapplicable when the original dismissal and the subsequent re-filing of the claim occur in the same federal court. *Headwaters*, 399 F.3d at 1052 n.4. Here, the Court is not faced with a prior judgment from a different court that was dismissed under state law principles, but rather, multiple judgments issued by the same federal court sitting in federal question jurisdiction rather than diversity. *Semtek* does not govern here. Moreover, contrary to Plaintiff's assertion, *Semtek* plainly did not hold that a dismissal under Rule 41(b) necessarily is a dismissal without prejudice that cannot have res judicata effect in federal question cases. *Semtek* did not even involve the effect of a prior involuntary dismissal for failure to prosecute or to comply with court orders or rules. In any event, as shown above, under longstanding precedent, an involuntary dismissal pursuant to Federal Rule of Civil Procedure 41(b) is a dismissal on the merits and with prejudice for purposes of this case.

As secondary support for his argument, Plaintiff cites to Wright & Miller, Federal Practice and Procedure, § 4440, for the proposition that a penalty-based dismissal will not be accorded res judicata effect. Plaintiff's invocation of the cited portion of this treatise is odd, to say the least, given that the treatise makes abundantly clear that a penalty dismissal, whether under Rule 41(b) or as a discovery sanction, *will* result in a res judicata bar of a second action under the above-noted language of Rule 41(b). Equally oddly, without any citation provided, Plaintiff alludes to a case entitled "*Hardy v. America Best Home Loans*," purports to quote from it, and represents that the Supreme Court therein reversed the Ninth Circuit and held that a penalty dismissal will not be accorded claim preclusion effect. [Opposition at 5-6, 10.] The Court has been unable to find any such Supreme Court or Ninth Circuit decision under that case title. In fact, the language Plaintiff quotes is contained in a *California* decision, *Hardy v. America's Best Home Loans*, 232 Cal. App. 4th 795, 806-07 (2014), which has no application here. Plaintiff's representation that *Hardy* is a Supreme Court decision that rendered a

17

1    federal law holding is untrue.

2         The second obvious problem with Plaintiff's res judicata argument is that it

3    rests on his mischaracterization of the record, namely, his misrepresentations as to

4    District Judge O'Connell's actions and orders in the First Action and the Second

5    Action.[6]  To start with, as noted earlier, Plaintiff contends that the First Action

6    Dismissal Order necessarily issued on a without prejudice basis, because District

7    Judge O'Connell said that she would not have dismissed the case if only Plaintiff

8    had disclosed additional medical records, but he could not do so due to his concern

9    about privacy and the effect on his career and life opportunities.  [Opposition at 3.]

10   Plaintiff's proffered excuse is unconvincing, given that the record demonstrates that

11   Plaintiff actually did submit a number of medical records in the First Action and

12   when he did so, he repeatedly asked that they be filed under seal, which was

13   permitted.  [*See* First Action Docket Nos. 50 (Ex. 1), 51, 75-76, 147, 154, 155, 156.]

14   Plaintiff plainly knew exactly what do to protect his privacy with respect to any

15   medical records he wished to submit in the First Action and he took the necessary

16   steps.

17        In any event, Plaintiff's failure to submit additional medical records is not the

18   reason why the First Action was dismissed, as the record establishes.  While

19   Plaintiff quotes a selected portion of the First Action Dismissal Order that he claims

20   _____

21   [6]      In another mischaracterization of the record, Plaintiff states that the reasons given by the
     Court for dismissing the Third Action through the April 29 Order were that the complaint

22   contained defective causes of action and co-defendants, and that he eliminated "all defects"
     identified in the April 29 Order when he initiated the Fourth Action.  [Opposition at 15.]  In fact,

23   the first and principal reason identified in the April 29 Order for dismissing the Third Action
     without leave to amend was res judicata, and the secondary reason was untimeliness, both non-

24   rectifiable defects.  While the April 29 Order did note that some of the claims alleged failed on
     their faces (*i.e.,* sought civil relief for violations of federal or state criminal statutes or were

25   brought directly under the California Constitution or California Civil Code provisions, even
     though no private rights of action had been authorized under any of them), the bases for dismissal

26   of the *entire* action were res judicata and untimeliness.  Moreover, the May 13 Order dismissing
     the Fourth Action expressly found that the complaint filed did *not* rectify the inherent res judicata

27   and untimeliness problems identified in the April 29 Order; Plaintiff's representation here that he
     had done so simply is not correct.

28

                                              18

shows that District Judge O'Connell was equivocal about dismissing the First Action, a reading of her entire Order, as well as the filed transcript of the hearing, makes clear the disingenuous nature of Plaintiff's selective quotation.  District Judge O'Connell plainly did take Plaintiff's medical situation into account in making her decision to issue an involuntary dismissal order in the First Action.  She noted that she did "not doubt that Plaintiff experiences health-related difficulties" and that if Plaintiff had provided evidence that he was "truly completely incapacitated on each and every date where he missed a hearing or filing deadline," she might be "less inclined" to dismiss the First Action.  That said, District Judge O'Connell then explained why dismissal was required regardless of Plaintiff's medical situation:

> However, while Plaintiff has proffered *some* evidence that he faced *some* medical problems, it is not clear to this Court that this should excuse his *repeated* failure to appear.  In addition, during the time frame Plaintiff claims to be incapacitated he engaged in litigation in the court of appeal.  Further, Plaintiff could have challenged the earlier imposition of sanctions based on his incapacitation on the specific dates for which he was sanctioned for failing to appear; however, Plaintiff provided no satisfactory explanation then, and he has not provided one now, as to why he was unable to appear on *any* of his scheduled deposition dates and why he missed multiple hearing dates.  Further, Plaintiff appears to have been sufficiently well, as a general matter, to be able to prosecute this case, as well as file a premature appeal of an order in this case; Plaintiff has filed multiple motions and *ex parte* requests in this action.  The Court is skeptical, therefore, that Plaintiff was truly incapacitated on each of his scheduled deposition dates.

(First Action Dismissal Order at 7.)  In short, District Judge O'Connell made it clear that while she believed that Plaintiff did suffer from medical issues that rendered things difficult for him, this was not enough to excuse his ongoing noncompliance, because she believed that Plaintiff's own behavior during the course of the litigation belied his assertion that his repeated failures to appear for his deposition and to otherwise comply with discovery and hearing obligations should be excused by his

19

1    assertions of medical problems.

2        In addition, at both the hearing on the Defendants' First Action motion to

3    dismiss and in her First Action Dismissal Order, District Judge O'Connell outlined

4    Plaintiff's repeated failures to comply with discovery, rules, and court orders and the

5    related imposed sanctions that had proven to be ineffective at getting him to meet

6    his obligations.  [First Action Dismissal Order at 2-3; Docket No. 164 (transcript of

7    April 14, 2014 hearing) at 6.]  She noted that Plaintiff had been given "multiple

8    attempts to litigate this case" and she afforded him the opportunity to explain why

9    the case should continue, before ultimately concluding that Plaintiff had squandered

10   the "opportunity after opportunity" he had been afforded to litigate the case, that

11   "legally the time has come," and that she had "no alternative" but to dismiss the

12   case.  [Docket No. 164 at 3-4, 7-8.]  Any notion that District Judge O'Connell was

13   reticent about dismissing the First Action based on concerns about Plaintiff's

14   medical situation or otherwise, and that she intended the dismissal to be on a

15   without prejudice basis, is fully belied by the First Action record.

16       Plaintiff's second argument is that District Judge O'Connell intended the First

17   Action Dismissal Order to be on a without prejudice basis, because three years later

18   in the Second Action, she purportedly expressly rejected Defendants' res judicata

19   argument set forth in their motion to dismiss.  [Opposition at 4 lns. 7-12 (asserting

20   that District Judge O'Connell "dispelled any notion of [the First Action's] dismissal

21   with prejudice in the Order of Remand [in the Second Action] rejecting all the

22   arguments, pleading the statute of limitations, collateral estoppel, claim preclusion

23   and res judicata in their motion for dismissal"); *id.* at 9 lns. 11-13 (asserting that the

24   First Action Dismissal Order was denied without prejudice, because District Judge

25   O'Connell "stated as much in her ruling" denying the motion to dismiss in the

26   Second Action); and *id.* at 12-13 (asserting that in her order remanding the Second

27   Action, District Judge O'Connell "rejected" the Defendants' motion to dismiss

28   arguments, including that the First Action Dismissal Order was "with prejudice")).

                                        20

1    Plaintiff's representations are, yet again, untrue.

2        As noted earlier, after Defendants removed the Second Action, they filed a

3    motion to dismiss, raising as grounds, *inter alia*, res judicata and untimeliness.

4    District Judge O'Connell denied that motion as moot after Plaintiff filed an amended

5    complaint in response to it.  Contrary to Plaintiff's representation, she did not deny

6    the motion on any other basis and did not reach or resolve any of Defendants'

7    arguments.  [Dkt. 15.]  With his amended complaint, which now asserted only state

8    law claims, Plaintiff filed a motion to remand, arguing that the case belonged in

9    state court.  Defendants thereafter moved to dismiss the amended complaint, again

10   asserting res judicata and untimeliness.  [Dkt. 17.]  They also filed an opposition to

11   the motion to remand, in which they argued that judicial economy principles

12   warranted keeping the Second Action before the federal court, given that District

13   Judge O'Connell had presided over the First Action and Plaintiff's claims lacked

14   merit.  [Dkt. 16.]

15       Two weeks later, District Judge O'Connell issued her Order remanding the

16   Second Action.  [Dkt. 18.]  She noted that Plaintiff's motion to remand included

17   arguments in opposition to the motion to dismiss, but that the motion to dismiss

18   "addresses different issues than the instant [motion to remand] and that "the Court

19   does not consider these arguments."  [Dkt. 18 at 4 n.4.]  In addressing the

20   Defendants' judicial economy arguments, District Judge O'Connell noted that she

21   had never reached and ruled on the merits of Plaintiff's claims, and thus, judicial

22   economy did not favor exercising supplemental jurisdiction over an action that now

23   consisted only of state law claims.  [*Id.* at 8-9.]  She also noted that "Defendants

24   may argue that Plaintiff is estopped from" pursuing his claims based on the First

25   Action, but that the existence of any such res judicata issue would not render

26   remand judicially economical, because she had "never before considered" this

27   argument and, thus, there would be no duplication of resources if the argument were

28   made to the state court following remand.  [*Id.* at 8 n.6.]  District Judge O'Connell

concluded that, after weighing all the relevant factors under 28 U.S.C. § 1367(a), exercising supplemental jurisdiction over Plaintiff's state law claims was not appropriate and remanded the case.  [*Id.* at 10.]  At no point in the remand order did District Judge O'Connell consider, opine as to, or resolve Defendants' res judicata argument (or any other argument) raised in their motion to dismiss.  [*Id., passim*.]  Plaintiff's assertion that she did so in her remand order, and therein rejected finding the First Action Dismissal Order to serve as a res judicata bar, is plainly false.

Finally, the Court notes Plaintiff's contention that the Court's April 29 and 13 Orders dismissing the Third and Fourth Actions as barred by res judicata should be disregarded, because they are "to the detriment of" and "incompatible" with District Judge O'Connell's First Action Dismissal Order and are "outside the norms of federal jurisprudence and case law precedent."  [Opposition at 14-15.]  To the contrary, those two subsequent Orders gave the First Action Dismissal Order the full deference and credit required by finding it to serve as a bar to Plaintiff's repetitive third and fourth lawsuits, in compliance with Supreme Court and Ninth Circuit precedent.  If Plaintiff believed the April 29 Order and the May 13 Order to be wrong and to be inconsistent with the First Action Dismissal Order, his remedy would have been to take a timely appeal at the time those Orders issued.  Plaintiff, in fact, did so, as to the May 13 Order dismissal of the Fourth Action and the Ninth Circuit agreed with this Court, finding that Plaintiff's appeal was so "frivolous" that summary dismissal was warranted. Plaintiff's efforts here to overturn both the California court's decision on appeal finding the Second Action to be barred by res judicata and this Court's prior Orders finding that the First Action Dismissal Order bars Plaintiff's third and fourth efforts to file the same lawsuit over and over are untimely, procedurally improper, and in any event, ineffectual.

The substance and claims of the instant Complaint have been the subject of four prior lawsuits filed by Plaintiff – three initiated directly in this District by Plaintiff and one pending here for a brief period based on removal followed by a

remand.  The first lawsuit was resolved adversely to Plaintiff through an involuntary dismissal that, by operation of law, is deemed to be an adjudication on the merits with prejudice.  When the second lawsuit was returned to state court, the Los Angeles County Superior Court and the California Court of Appeal found that the second lawsuit was barred by claim preclusion principles.  When Plaintiff filed the same lawsuit for a third time in this Court, the April 29 Order issued, finding the lawsuit to be barred by res judicata (as well as its untimeliness).  When Plaintiff filed this same lawsuit for a fourth time in this Court, the May 13 Order again found the lawsuit to be barred by res judicata (and its untimeliness).  There is no basis for concluding otherwise in the face of Plaintiff's fifth attempt to bring an effectively identical lawsuit.  While there have been nominal variations over time in the labels and forms of Plaintiff's claims, they have remained identical in substance and with respect to the injuries for which he seeks redress, as have the nucleus of facts that are alleged to support his right to relief.  This action is barred by res judicata – a fundamental and preclusive defect that cannot be corrected through amendment. Thus, allowing amendment would be a futile, empty, and wasteful gesture. Therefore, the Motion should be granted, leave to amend should be denied, and this case should be dismissed with prejudice.

## RECOMMENDATION

For all of the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order:  (1) accepting this Report and Recommendation; (2) granting the Motion and dismissing the Complaint without leave to amend; and (3) dismissing this action with prejudice.

DATED: November 15, 2021

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE**

Reports and Recommendations are not appealable to the United States Court of Appeals for the Ninth Circuit, but may be subject to the right of any party to file objections as provided in the Local Civil Rules for the United States District Court for the Central District of California and review by the United States District Judge whose initials appear in the docket number.  No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until the District Court enters judgment.